IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-206-FL

NICHOLAS M. DIBONA,                    )
                                       )
                Plaintiff,             )
                                       )
        v.                             )                    ORDER
                                       )
NANCY A. BERRYHILL,                    )
Acting Commissioner of Social Security,)
                                       )
                Defendant.             )

        This matter is before the court on the parties' cross motions for judgment on the pleadings.

(DE 19, 25). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United

States Magistrate Judge Robert T. Numbers, II entered memorandum and recommendation

("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's

motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues

raised are ripe for ruling. For the reasons that follow, the court adopts the M&R, denies plaintiff's

motion, and grants defendant's motion.

## BACKGROUND

        On July 17, 2012, plaintiff protectively filed an application for disability insurance benefits.

On October 15, 2012, plaintiff also protectively filed a Title XVI application for supplemental

security income. In both applications, plaintiff alleged disability beginning February 19, 2009. The

claims were denied initially and upon reconsideration. Plaintiff requested hearing before an

administrative law judge ("ALJ"), who held a hearing September 8, 2015. At the hearing, plaintiff

amended his alleged date of disability to begin on October 29, 2012. The ALJ denied plaintiff's

claims by decision entered September 21, 2015. Following the ALJ's denial of his applications, plaintiff timely filed a request for review before the Appeals Council. The Appeals Council denied plaintiff's request, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed this action seeking judicial review.

## DISCUSSION

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel,

227 F.3d 863, 872 (7th Cir. 2000)).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since October 29, 2012. At step two, the ALJ found plaintiff had the following severe impairments: hypothyroidism; hypertension; asthma; obesity; a major depressive disorder; and an anxiety disorder. At step three, the ALJ determined these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform medium work, with the following environmental and mental restrictions:

> The claimant can lift/carry and push/pull 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and walk for up to eight hours each during an eight-hour workday. He is not able to work in environments with concentrated exposure to respiratory irritants, such as dust, fumes, and smoke. The claimant has a decrease in the ability to concentrate on and attend to work tasks to the extent that he can only do simple, routine, repetitive tasks (i.e. can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). The claimant is able to concentrate for two-hour increments with normal rest breaks (i.e. 15, 30, 15 minutes). The claimant's stress and anxiety so limit him that he can deal with coworker's and supervisors no more than frequently and be can only occasionally deal with the public. He is unable to work at jobs requiring complex decision-making, constant change, or dealing with crisis situations.

(Tr. 26-27).

At step four, the ALJ concluded plaintiff was unable to perform any past relevant work. At step five, the ALJ determined jobs exist in the national economy that plaintiff can perform. Thus, the ALJ concluded plaintiff was not disabled under the terms of the Social Security Act.

B.     Analysis

In his objections to the M&R, plaintiff argues 1) that the ALJ failed to properly assess his RFC, 2) the vocational expert's ("VE") testimony and the ALJ limiting DiBona to only occasional interaction with others in the workplace was inconsistent with the Dictionary of Occupational Titles ("DOT") and the Occupational Information Network ("O*Net"),[1] and 3) the ALJ failed to support his credibility determination with substantial evidence.  The court addresses each of these objections in turn.

1.     Plaintiff's RFC

Plaintiff challenges the ALJ's findings that he would be able to work, arguing that the ALJ failed to consider his inability to complete a normal workday and workweek and perform at a consistent pace without a reasonable number and length of breaks.

The RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)).  Where the ALJ says plaintiff can perform certain functions, he must discuss plaintiff's "ability to perform them for a full workday." Mascio, 780 F.3d at 637.

The court finds this case to be analogous to Sizemore v. Berryhill.  878 F.3d 72, 80–81 (4th Cir. 2017).  In Sizemore, plaintiff challenged his RFC finding, relying on Mascio to argue the ALJ knew of his "'moderate' difficulties with regard to concentration, persistence, and pace but nonetheless [failed], when determining his residual functioning capacity, either to account for this

---

[1]The Occupational Information Network ("O*Net") is an alternative job classification system established by the Department of Labor and used by the government for other applications.  See, e.g., 34 C.F.R. § 600.2 (defining "recognized occupation" under the Higher Education Act of 1965, as amended).

limitation or to explain adequately why it did not affect [plaintiff's] ability to work." Id. at 80. The Fourth Circuit rejected plaintiff's challenge, noting that the ALJ "determined early in his analysis that Sizemore had moderate difficulties with regard to concentration, persistence, or pace." Id. The court further explained that the ALJ's decision was supported by substantial evidence because the ALJ relied upon the opinions of two different doctors, one of whom stated plaintiff "would generally be able to maintain [attention] for at least two [hours] at a time as needed to do simple, routine tasks and was thus mentally capable of independently performing basic, routine tasks on a sustained basis." Id. at 80-81 (internal quotations omitted).

Plaintiff, citing Mascio, argues that the ALJ failed to consider his inability to complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of breaks. The ALJ concluded plaintiff "is able to concentrate for two-hour increments with normal rest breaks (i.e. 15, 30, 15 minutes)." (Tr. 26-27). To support his finding, the ALJ gave substantial weight to the opinions of Drs. Cruise and Fulmer, who each opined plaintiff "could perform the mental demands of a wide range of unskilled work in a low stress setting with limited social demands." (Tr. 32) (citing Tr. 74-92, 93-111, 114-38, 139-62). Furthermore, Dr. Fulmer's opinion expressly noted that plaintiff "is capable of maintaining attention and concentration for two hours at a time to perform simple tasks." (Tr. at 133, 157). Consequently, Sizemore controls this case. The ALJ's determination with respect to plaintiff's concentration, persistence, or pace is supported by substantial evidence.

Plaintiff's argues that Mascio requires remand in this case and cites numerous other decisions in an attempt to bolster his position. However, the Sizemore court cited Mascio to support its decision that ALJ's decision and supporting opinion testimony constituted substantial evidence of concentration, persistence, or pace. Sizemore, 878 F.3d at 81. Neither plaintiff's brief nor his

supporting case law persuasively explains how his case is distinguishable with regard to determining plaintiff's RFC.  Therefore, plaintiff's first objection to the M&R is overruled.

2.      Vocational Expert Testimony

Next, plaintiff objects to the M&R's determination that there is no apparent conflict with the VE's testimony and the ALJ limiting DiBona to only occasional interaction with others in the workplace.  Specifically, plaintiff argues that the ALJ did not properly address discrepancies between the VE's testimony, O*Net, and DOT when inquiring as to whether jobs existed in the national economy that plaintiff could perform.

When proving that work is available to plaintiff in the national economy, defendant "rel[ies] primarily on the DOT" and "may also use VEs . . . to resolve complex vocational issues."  SSR 00-4P,  2000 WL 1898704 *2 (Dec. 4, 2000).  Where a VE's testimony is inconsistent with the information given by the DOT, the ALJ is required to resolve conflicting testimony "before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled."  Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015).  An ALJ must "resolve the conflict by determining if the explanation given by the [expert] is reasonable," and to "explain the resolution of the conflict irrespective of how the conflict was identified."  Id. (emphasis omitted).

The ALJ did not err by not asking the VE about inconsistencies between his testimony and the O*Net.  SSR 00-4P requires the ALJ to consider the DOT and VE testimony when determining if jobs exist in the national economy.  2000 WL 1898704 at *2; see Pearson, 810 F.3d at 207.  The regulation does not mention, much less require, that the must ALJ consider O*Net when making a determination about whether jobs exist in the national economy.  Additionally, plaintiff fails to indicate which jobs cited by the ALJ in his decision that are obsolete.  Thus the ALJ did not err by only considering the DOT and VE testimony.

The ALJ also did not err when evaluating the discrepancy between the DOT and the VE's testimony. When posing a hypothetical to the VE, the ALJ asked "if the individual were off task more than 20 percent of the time during a workday, would there be occupations that they could perform?" (Tr. 68). The VE responded:

> Your Honor, the Dictionary of Occupational Titles does not address the issue of off task. However, my experience with employers and studies suggest a tolerance of no more than 10 percent of the workday. I know of no jobs that could accommodate 20 percent for an individual to be off task.

(Tr. 68). The ALJ then asked the VE whether his testimony was consistent with the DOT other than being "off task," and the VE testified it was (Tr. 68-69). The ALJ determined the expert's testimony regarding being off task was reasonable given the VE's experience with companies and based on employment studies. (Tr. 68-69).

The ALJ's decision determined that the VE's testimony was consistent with the information containing in the DOT, but did not explain the resolution of the conflict regarding the amount of time an employer could tolerate their employee being off task. (Tr. 33). Had the ALJ relied on the VE's testimony regarding being off task, then the ALJ would have failed to properly carry out the step five analysis. Pearson, 810 F.3d at 208. However, the ALJ did not rely upon the particular hypothetical plaintiff has challenged, but instead the ALJ's original hypothetical to the VE, which is identical to plaintiff's RFC and consistent with the DOT. (Tr. 26-27, 33, 66-69). For the reasons stated above, plaintiff's RFC was properly determined, and thus the ALJ did not err determining if the VE's testimony was consistent with the DOT.

Plaintiff argues that the ALJ has a duty to consider the O*Net because the DOT is out of date, and the Fourth Circuit requires the ALJ to use current occupation classifications. (DE 28 at 10) (citing English v. Shalala, 10 F.3d 1080, 1084-85 (4th Cir. 1993)). Plaintiff misreads Fourth

Circuit precedent. In English, the court held that using an outdated version of the DOT in place of the current version of the DOT was reversible error, but it did not did not require that the ALJ consider information from another source of employment information. English, 10 F.3d at 1084-85. Even if plaintiff's general argument for a change in policy has some merit, it is the place of the Commissioner, not this court, to issue a new regulation requiring consideration of the O*Net in disability benefits proceedings. Consequently, plaintiff's second objection to the M&R is overruled.

3.      Plaintiff's Credibility

Finally, plaintiff argues that the ALJ failed to identify what testimony he believed to be credible or not credible.

Where an ALJ assesses credibility of evidence, the ALJ must first determine whether the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006). After this determination is made, the ALJ must then evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects h[is] ability to work." Craig, 76 F.3d at 594–96 (internal citations omitted). The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, ... laboratory findings, ...daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Id. at 595 (internal citations omitted). The ALJ must not merely summarize the evidence in the record the ALJ deems credible in calculating plaintiff's RFC, but must explain, based on the evidence summarized, his conclusion that plaintiff can actually perform the tasks required by the designated RFC. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018).

Here, the ALJ properly assessed the credibility of plaintiff's testimony. At step one of the evaluation of plaintiff's symptoms, the ALJ found "the claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms." (Tr. 31). However, at step two the ALJ did not fully credit plaintiff's testimony and evidence as to the intensity, persistence, and limiting effects of his symptoms. (Tr. 31).

The ALJ's decision not to credit plaintiff's testimony is supported by substantial evidence. In support of his decision, the ALJ points to the fact that plaintiff's physical conditions, including hypothyroid, hypertension, and asthma have remained well-controlled with treatment, plaintiff's obesity has not limited his functions, and that based the evidence available in the record, plaintiff's physical functions remained normal. (Tr. 28-29, 31) (citing Tr. 391-410, 411-13, 482-86, 487-91, 492-506, 506-07, 508-13, 514-17, 542-547, 558-90, 591-663). Plaintiff's mental conditions have also been adequately controlled with treatment, and his cognitive and mental functions remain normal. (Tr. 29-31) (citing Tr. 391-410, 487-91, 492-504, 518-24, 525-40, 548-57, 558-90, 669-92). Taken together, the extensive documentation considered by the ALJ provides substantial evidence for finding plaintiff's testimony not entirely credible concerning the intensity, persistence, and limiting effects of these symptoms. Craig, 76 F.3d at 595 (holding a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers[.]").

Plaintiff argues that the ALJ failed to properly assess his credibility because the ALJ did not adequately assess the effects of his symptoms on daily living, pointing specifically to his inability to sleep. (DE 28 at 13-14) (citing Woods, 888 F.3d at 686). However, the objective medical evidence relied upon by the ALJ accounts for plaintiff's subjective reports of sleep impairment, and these reports still found that plaintiff's cognitive and mental functions remain normal, consistent with the ALJ's decision. E.g., (Tr. 30-31, 548-57, 558-90). Plaintiff's third objection to the M&R

is overruled.

## CONCLUSION

Based on the foregoing, and upon de novo review of the administrative record, the court ADOPTS the recommendation in the M&R, DENIES plaintiff's motion for judgment on the pleadings, (DE 17), and GRANTS defendant's motion for judgment on the pleadings, (DE 19). The clerk is DIRECTED to close this case.

SO ORDERED this the 28th day of September, 2018.


LOUISE W. FLANAGAN
United States District Judge